## WILLIS *et al. vs.* FOSTER, trustee, *et al.*

1. The existence or non-existence of fraud is peculiarly a question for the jury. The question being whether executors and a trustee had combined to defraud certain beneficiaries of an estate by buying in property at the executor's sale at a price below its real value, and appropriating it to their own use, the jury having found that fraud did exist, the evidence being sufficient to warrant the finding, and the presiding judge being satisfied, this court will not interfere with his refusal to grant a new trial.

2. If executors fraudulently bought property belonging to the estate at their own sale, including both realty and personalty, and subsequently one of them sold his interest in the realty to a purchaser who took with notice, such purchaser would not be liable to the same extent as the executors, not being interested in the personalty and therefore not liable on account thereof.

Fraud. Administrators and executors. Trusts. Equity. Verdict. New trial. Before Judge LAWSON. Greene Superior Court. September Adjourned Term, 1879.

The following, in connection with the decision, sufficiently reports this case:

Complainants, wife and children of John T. Willis, filed their bill against the defendants, alleging, in brief, as follows: R. J. Willis died October, 1866, testate, leaving plantation, stock, etc. L. B. Willis, J. H. Willis and S. B. Heard were executors. By the will they were required to sell all of the property. Complainants were entitled, by the will, to one-sixth of the proceeds of the estate, after paying debts. L. B. Willis was appointed testamentary trustee to receive the same, and on arrival of the children at the age of twenty-one to pay over so much as he considered right, reserving a sufficiency for the wife of J. T. Willis, one of the complainants. Defendants have failed to comply with the provisions of the will, and have appropriated assets of the estate. They sold the personalty of the estate in 1867, and bought in most of it. In 1867 the plantation was sold at public sale

by the executors, subject to dower of widow of R. J. Willis, testator, and, by agreement between the executors, it was bid in by Strain for them at $3,000. Its actual value was $20,000, and annual rental was $2,000. On same day the executors conveyed to Strain, and Strain at once reconveyed to them individually. No money passed in this transaction, and there was no change of possession. After such pretended sale the defendants claimed the property as theirs individually. Subsequently Heard conveyed his one-third away in fraud of complainants, and died insolvent in 1875. J. H. and L. B. Willis are insolvent. L. B. Willis has made no returns as trustee for complainants. They pray for discovery, account and settlement, cancellation of deeds, removal of trustee, receiver, etc.

Amendments: Making Inman, Swann & Co. parties defendants, alleging that they had notice that executors bought at their own sale. That executors were illegally discharged by the ordinary. That return of executors of $4,343.00, paid by them to complainants' trustee, is untrue. That Inman, Swann & Co. are purchasers from Heard, with notice.

The complainants amend their prayer by asking to be allowed part of the $9,000.00, the proceeds of the sale, and that the land may be subject to sale therefor.

Inman, Swann & Co. answered, in brief, as follows: They know nothing of death of testator Willis, his estate, will, executors, etc., nor of complainants' interest in the estate, or their application to executors for settlement, nor of the acts of the executors, nor of the sale of the land by the executors, though they are informed that it was duly made, advertised, etc.; that it brought its full market value; that the executors accounted for it at thrice its market value, or $9,000 00, and that complainants, through their trustee, received their *pro rata* of the $9,000.00. They know nothing of the doings of Strain and the executors. They allege that they bought from

Heard his one-third, paying for it by settling a debt on Heard; that they purchased in the utmost good faith, and should not be affected by the acts of the executors, and that Heard and the Willisses were in peaceable, etc., possession since 1867. They deny fraud, collusion, etc., and that the land is worth $20,000.00, or any such sum. They cannot answer interrogatories in the bill. They set up receipts given by trustee for complainants, and the final settlement and discharge of the executors. Defend also on ground of lapse of reasonable time in which sale could have been avoided; also claim seven years prescriptive title, and that complainants, before they can object to sale, must pay back what they have received.

They subsequently amended their answer, alleging as follows:

1. Final settlement of executors; that the land though sold for $3,000.00, was accounted for to complainants and the other legatees at $9,000.00, and that about $4,000.00 was paid to complainants' trustee.

2. They pray that as none of the other legatees object, but on the contrary ratify the sale, and that before complainants can recover they must pay to Inman, Swann & Co. what Heard paid for his one-third, or $3,000.00; and to J. H. Willis what he paid for his share, or $3,000.00; and that, as complainants are non-resident and insolvent, and the resale will result in a loss, they should indemnify the defendants and place them in *statu quo*.

L. B. and J. H. Willis answered, in brief, as follows: Admit death of R. J. Willis, the will, qualification of defendants as executors, etc. Admit that after sale one-sixth of the proceeds were to go to complainants. Allege that defendants paid specific legacies and paid to L. B. Willis, trustee for complainants, $4,343.00, as appears by returns, and it was charged to him on proper record. Deny confederation, fraud, etc. Allege that all that was done was for benefit of estate and at request of testator. Admit that personalty was sold in 1867 at full value and

sale ratified by decree of superior court in 1870. Admit that the plantation was sold in 1867, on sixty days' public advertisement in three newspapers—Augusta *Constitutionalist*, *Chronicle and Sentinel*, and Greensboro *Herald*. That it was sold to Strain as highest bidder for $3,000.00. Deny that the land was sold at a mere nominal price, or that it was bid in by Strain for defendants so that they could get it at less than real value. Allege that, to the surprise of the executors, the dower was given notice of (as it was supposed that the widow would take the bequest in lieu thereof), and that thereupon, for the benefit of the estate, they procured Strain to make it bring highest value by bidding it in. Admit that they really bought it at highest price at public sale. Allege that complainants' trustee received much more than complainants' part of the land at its highest market value, defendants accounting for the place at $9,000.00. Deny its value was $20,000, or rented value $2,000.

By amendment J. H. Willis answered: Proceeding by complainants is not "in a reasonable time." That he has a good and sufficient title. That the land was accounted for at $9,000.00, that complainants must pay J. H. Willis one-third, or $3,000.00, and Inman, Swann & Co., assignees of Heard, one-third, or $3,000.00.

The case was referred to an auditor, and exceptions taken to his report.

It is unnecessary to detail the evidence which was conflicting.

The jury found for complainants $6,330.24.

Defendants moved for a new trial. It was refused, and they excepted.

JOHN C. REED; M. W. LEWIS & SONS; P. B. ROBINSON; HOOK & WEBB, for plaintiffs in error, cited 41 *Ga.*, 579; Code, §2608, 3229, 3263; 51 *Ga.*, 139; 55 *Ib.*, 25; 38 *Ib.*, 269; 8 *Ib.*, 241; 39 *Ib.*, 381.

A. G. & F. C. FOSTER; J. A. BILLUPS, for defendants,

cited Code, §3151 ; 19 *Ga.*, 130; 13 Allen, 407; 61 *Ga.*, 131, 137; 47 *Ib.*, 589 ; 48 *Ib.*, 120 ; 49 *Ib.*, 622, 43 *Ib.*, 529 ; 49 *Ib.*, 473 ; Code, §2751 ; 41 *Ga.*, 186 ; 37 *Ib.*, 94.

JACKSON, Justice.

The wife and children of John T. Willis filed their bill in equity against J. H. and L. B. Willis, executors of the will of R. J. Willis, and L. B. Willis also in his character as trustee of complainants under said will. The complainants were left one-sixth of the estate of testator, and L. B. Willis was made their testamentary trustee to hold and manage it for them. S. B. Heard had been also one of the executors, but died, and the bill is prosecuted against the two survivors. The executors were directed to sell the estate, real and personal, which they did, buying the realty themselves, and portions of the personalty, through one Strain, as nominal purchaser of the realty, for $3,000.00, who reconveyed to them on the same day for the same sum. They worked the plantation thus bought in partnership for several years, and receipted each other for their several shares of the estate—L. B. Willis giving his receipt as testamentary trustee for these complainants, and another receipt for his own family as their trustee. Heard sold his interest in the land, which was one-third, to Inman, Swann & Co., and at a subsequent stage of the case, the latter were also made parties to the bill as co-defendants. The bill is framed upon the idea that the sale to the trustees or executors by themselves was fraudulent, and complainants being minors, and never having received one dollar, either from the executors or from the testamentary trustee, had the right to go upon the land for their share of their grandfather's estate, and their mother for hers ; and inasmuch as Inman, Swann & Co. bought the interest of Heard with knowledge of the sale of executors to themselves, it proceeded against them as also liable to complainants.

The whole cause was submitted to an auditor, who

reported thereon ; four exceptions were made to the report by complainants, all of which were sustained, and the jury found a verdict of six thousand and three hundred dollars for complainants, with lien on the land for payment thereof. A motion was made to set aside the verdict because it was contrary to certain charges of the court, to the law of the case, and to the evidence. The court below overruled the motion for a new trial, and the defendants excepted.

1. There was evidence sufficient, in our judgment, to sustain the finding on the exceptions to the report of the auditor. The main question was fraud or no fraud ; and by the law everywhere, ratified and reaffirmed by our Code, fraud is subtle, and circumstances, though slight, will be considered sufficient to uphold the finding of the jury thereon, it being a subject peculiarly suited to investigation by them.

Though the executors bought the land from Strain at what he bid it off, three thousand dollars, they accounted therefor to each other at nine thousand, thus showing that they themselves did not consider the price fair. These complainants, however, did not participate in the advantage of this additional price put on the land, for they got nothing from the estate, and will probably get nothing unless it be got from this land. They lived and still live in Arkansas, and a very large estate in which their ancestor left them an interest equal to that of the other legatees, has been swallowed up by the others in Georgia. The presiding judge having decided that the verdict is not contrary to his charge, and the entire charge not being set out in the record, we decline to interfere with the verdict on that account. So in regard to the evidence. There is enough to show that complainants were not dealt fairly with, and that all the executors should have looked to their interest so far as not to part with their share to a trustee, doubtful as to solvency, and to go into partnership with him in the land bought under very suspicious

circumstances, and divided among themselves with nominal receipts for money to each other.

2. So far as the executors and trustees are concerned, we have no difficulty in affirming the judgment. But Inmann, Swann & Co., it strikes us, though chargeable with constructive notice, to say the least, of the purchase of the executors of *this land*, and therefore it may be, liable for the interest of the complainants in the land, or the proceeds thereof, are certainly not liable for their interest in the personalty of the estate, with which they had nothing to do.

As the verdict, therefore, makes no distinction between them and the other defendants, we cannot see that as to Inman, Swann & Co., it is not contrary to the evidence and the law, in that it is too large.

Inasmuch as complainants have received no part of the estate, as found by the jury, and found properly, we think they have nothing to tender back either to Inman, Swann & Co., or to the executors.

If the executors colluded with their trustee to defraud them, and he did defraud them, which the jury found, the trustee's receipt of the money is not binding upon them, even if he got it, which does not seem to be the case. This bill is against that trustee and the other executors, his confederates in fraud, and Inman, Swann & Co., who bought, knowing of the voidable purchase of the land. We incline, therefore, to think that the latter, being affected with notice when they bought from Heard, are responsible to complainants to the extent of complainants' interest in the land, which is one-sixth thereof, or its proceeds; and inasmuch as we cannot direct the verdict reduced, not knowing what is for land and what for personalty, or what part principal and what interest, we conclude to award a new trial to Inman, Swann & Co., and to affirm the judgment as to the others.