INMAN, SWANN & COMPANY *vs.* FOSTER, trustee.*

1. Many of the questions made in this record have been considered and adjudicated by the court when this case was here before.
2. Three executors caused the land of their testator to be put up at executors' sale and bid in for them at three thousand dollars. A conveyance was made to the bidder, who, on the same day, conveyed to the executors as individuals. No money was passed. Subsequently one of the executors sold his interest ; the deed from him to his purchaser contained the following clause, (after describing the lands by metes and bounds) : " Being the same land purchased by the said Stephen D. Heard (the grantor) together with the other executors of the will of Richard J. Willis, with proceeds of the sale of certain property of the estate of said Richard J. Willis : "

*Held,* that the purchasers took with notice of the misapplication of the funds of the estate, and the property could be pursued into their hands by the beneficiaries under the will.

3. One of the three executors being the testamentary trustee of certain legatees of the estate, after the purchase by the executors and the consequent assumption by each of a liability for his proportion of the purchase money, the other two could not discharge themselves or bind the *cestui que trusts* by a settlement with the testamentary trustee by turning over to him his own debt and taking his receipt for that amount as paid for such beneficiaries.

December 30, 1882.

Equity. Trusts. Title. Notice. Administrators and Executors. Before Judge LAWSON. Greene Superior Court. March Term, 1882.

This case was before the Supreme Court on a former occasion, and will be found fully reported in 65 *Ga.*, page 82.

To the report there contained it is necessary to add only a brief statement, to elucidate the new issues made on the present trial.

Complainants, who were the wife and children of John T. Willis, filed their bill originally against L. B. Willis

*See Carmichael *et al. vs.* Foster, trustee, decided at the present term.

and J. H. Willis, alleging, in brief, as follows: R. J. Willis died testate in October, 1866, leaving a plantation, stock, etc., and designating defendants as his executors; and they qualified as such. By the will the executors were directed to sell all of the property of the trust estate, and one-sixth of the proceeds, after paying debts, was to be paid to L. B. Willis, as testamentary trustee for the wife and children of John T. Willis; and such testamentary trustee was to pay over to each child, upon arriving at age, his or her share, reserving a sufficiency for the wife. Defendants refused to comply with the provisions of the will, and appropriated the assets of the estate. They sold the personalty in 1867, and bought in most of it. On October 3, 1867, the plantation was sold at public outcry by the executors, subject to the dower of testator's widow. By agreement between the executors, it was bid in for them by one Strain, at $3,000.00. Its actual value was $20,000.00, and annual rental $2,000. On the same day the executors conveyed to Strain, and he at once conveyed to them individually. No money passed, and there was no change of possession. After this the defendants claimed the property individually, and Heard conveyed away his one-third in fraud of complainants. Heard died insolvent in 1875, and there has been no administration on his estate. J. H. and L. B. Willis are insolvent, and the latter has made no return as trustee for complainants. The prayer was for discovery, account and settlement, cancellation of deed, etc.

By amendments, the following facts, in brief, were alleged: L. B. Willis, as trustee for complainants, receipted to the other executors for complainants' interest, but this receipt was false, no actual payment to him as trustee having been made. The executors were granted a discharge by the ordinary *ex parte* and illegally. Inman, Swann & Co. bought from Heard with notice, actual or constructive, of the nature of the title. The prayer under the amendments was that the executors and those

holding under them, be required to pay to complainants their distributive share of the proceeds of the land, plac-ing its value at nine thousand dollars—the valuation placed upon it by the executors,—also, their distributive share of the proceeds of the personalty, and that judgment be rendered for complainants, and that all of the land be subject thereto.

Foster succeeded to the trusteeship, and therefore be-came a party complainant.

The answer was, in brief, as follows: Admits death of R. J. Willis, the will, the legacy to complainants and qualification of defendants as executors. Denies confed-eration, fraud, etc., and alleges that everything that was done was for the benefit of the estate. Defendants paid to L. B. Willis, trustee for complainants, specific legacies amounting to $4,340.00, as appears by returns and charges to him on proper record. The personalty was sold in 1867, at full value, and the sale was ratified by decree of the court in 1870. The land was sold in 1867, after sixty days' advertisement in three newspapers, to Strain for $3,000.00. This was not a nominal price, nor was it bid in by Strain so that they could obtain it below its value. To the surprise of the executors, notice of claim of dower was given, and, thereupon, for the benefit of the estate, they procured Strain to make it bring its highest value by bidding it in. In effect, they bought it ; and accounted for it at $9,000.00. Complainants' trustees received more than their share of the proceeds of the land at its highest market value. Its value was not $20,000.00, nor was its rental $2,000.00.

The evidence was somewhat conflicting. It is necessa-ry to state only two points contained therein : First, that the deed from Heard to Inman, Swann & Co., made in 1873, conveying a one-third interest in the plantation, stock, implements, etc., in describing the land, contained the following clause : " Being the same land purchased by Stephen D. Heard, executor, together with the other exec-

Inman, Swann & Co *vs.* Foster, trustee.

utors of the will of Richard J. Willis, with proceeds of sale of certain property of the estate of said Richard J. Willis ; " and, second, that L. B. Willis testified that he was indebted to the estate about $8,000.00 for property bought by him ; that no money passed, but he canceled his indebtedness by receipting as trustee.

The case was tried on exceptions to an auditor's report. The jury found in favor of certain exceptions, and rendered a verdict for complainants for $1,500.00 principal, with interest, to be made out of the land. Defendants moved for a new trial which was refused, and they excepted.

JAS. S. & E. B. HOOK ; H. T. & H. G. LEWIS ; S. F. WEBB ; JOHN C. REED, for plaintiffs in error.

F. C. FOSTER ; J. A. BILLUPS, for defendant.

SPEER, Justice.

Many of the questions made in this record have been considered and adjudicated by this court when this cause was here before, and found reported in the case of *Willis et alii vs. Foster, trustee,* 65 *Ga.,* 82. The case being between the same parties, the questions then decided are "*res adjudicata,*" and are not subject to review by this court.

The bill was filed for account and settlement, and to vacate a sale made by executors who were the purchasers at their own sale. By an amendment the complainants proposed to recover their proportion of the proceeds of said sale at a price agreed upon as devisees under the suit of their grandfather. The bill, answer, etc., were reported upon by an auditor to whom the cause was referred, and on the trial of certain exceptions made by the complainant to the auditor's report by a jury, the exceptions were sustained and a decree was had in money and subjecting the lands purchased by these plaintiffs in error. On a review

Inman, Swann & Co. *vs.* Foster, trustee.

of the case before this court a judgment of affirmance was had sustaining the decree as to the executors, but reversed as to these plaintiffs in error, because the verdict against them was excessive under the proof, the same including the personalty, for which they were not liable.

When the cause was heard again a trial was had upon the auditor's report, upon the same exceptions as against these plaintiffs in error, and a recovery had against them, and their motion for new trial being refused, they bring the case here for review. So that upon the trial of the same cause, with the same pleadings and evidence, it necessarily follows that many of the questions here for review have already been settled. The liability of the two surviving executors was made a finality in the other judgment, and the only question is whether this recovery against these plaintiffs in error is warranted by the law and facts of the case. All objections to the sufficiency of the exceptions and the liability of the executors we regard as settled, and the same ruling applies to all those questions which are identical in the two trials, save and except the question as to the liability of these plaintiffs in error under the law and facts.

It is insisted by plaintiffs in error since the amendment to the complainants' bill in which they abandon the prayer to set aside the sale and purchase of the land by the executors, that this validates and affirms the sale, perfects their title, holding as they do under the executors, and hence as against them no recovery can be had. This amendment was had and considered by this court when the cause was here before, and such was not then the ruling of the court. In reviewing this cause heretofore upon these pleadings and evidence, the court said if Inman, Swann & Co. had notice of this illegal and fraudulent conduct of the executors, and confederated with them in misapplying these trust funds, they would be liable to the extent of the interest the complainants had in these lands.

What notice does the evidence show these plaintiffs in

error had as to the misconduct of these executors. They purchased of Heard, one of these executors, an undivided one-third interest in these lands in 1873, and in the deed they received from Heard and wife on said purchase, in describing the land, it is recited, "the same land pur-chased by the said Stephen D. Heard, executor, together with the other executors of the will of Richard J. Willis, with proceeds of sale of certain property of the estate of said Richard J. Willis."

Here, then, is notice of a voidable sale, under which Heard held title, and still further, that at this voidable sale they paid for the land "with proceeds of sale of certain property of the estate;" and this notice is in the title deed under which plaintiffs in error seek shelter.

If these recitals be true, it certainly cannot be denied that the sale is voidable and the payment a clear misap-plication of the trust funds in their hands. If the recitals in this deed be true, and they are true as to these plaintiffs in error, can they claim to have received a title untainted with the maladministration of these trustees?

The sale was voidable in equity under the proofs, but if they used the assets of the estate to pay for it, the title that passed to them was but a trust for these de-visees and plaintiffs in error, with notice, stood toward these complainants in the same relation. The rule is, "all persons aiding and assisting trustees of any charac-ter with a knowledge of their misconduct, are directly ac-countable to the person injured." Code, §3157.

When these plaintiffs in error with knowledge, then, that the title held by Heard rested upon a voidable sale and was paid for with trust funds in his hands devised to others in breach of his duty as trustee, and they join him in a further misapplication by buying the land in consid-eration of an individual debt due them by Heard, are they not aiding and assisting this trustee in the misappli-cation of these funds?

Moreover, when assets are misapplied and can be traced

into the hands of persons affected with notice of the mis-application, the trust attaches still to the assets, and equity will aid in restoring them to their legitimate purpose. Code, §3152.

But it is insisted that these complainants should not recover, since their testamentary trustee had a settlement with his co-executors and gave a receipt in full for the distributive portion of complainants. To give a receipt is one thing, but to receive the distributive share is quite another. In pursuance of this arrangement to purchase this land at their own sale, each of these executors became liable to pay for his proportion of the purchase to the estate. If the co-executors saw fit to credit L. B. Willis individually for his purchase, it was at their own risk; but certainly they cannot discharge their trust by turning over to a testamentary trustee debts due by him individually to themselves individually and taking his receipt, and claim such a settlement binds the beneficiaries. When they settle legally, they must turn over the effects belonging to the *cestuis que trust*, or money in lieu thereof, or solvent notes well secured, on third parties, if the estate of the *cestuis que trust* has passed into such paper by due course of administration. 61 *Ga.*, 138. Their duty under this will was to settle in money with these devisees through their trustee, and not in a debt due by him of doubtful solvency. But it is insisted that these complainants have recovered a larger sum than they were entitled to under the evidence, in plaintiffs in error not receiving credit for $250.00 which these beneficiaries had received of the executors. It is to be presumed, as their recovery against the executors was both for the realty and personalty, that the executors received credit for any amounts paid out by them for said beneficiaries in the litigation against them.

If these plaintiffs in error are liable at all to these complainants, they are to the extent that they aided or assisted in misapplying the trust funds in the hands of these

executors.   They  hold this fund as trustees for these de-
visees, and to the extent of its value they  must account.
When they have accounted to the extent of their liability,
their accountability ceases.   We therefore  conclude that
these plaintiffs  in error were  made liable not  only upon
the ground that they had  notice of this voidable sale, but
because they also had  notice  that the assets of  this trust
estate entered into  the  purchase  of this  land to which
they afterwards received a title, and as a consequence the
equity of  these devisees attached  to this land to the ex-
tent of  its value, and it was proper it should be restored
to its legitimate purpose, that is to the payment of these
devisees under the will.

Judgment affirmed.